# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 (Subchapter V) |
| | § | |
| PM Management-Killeen I NC LLC, *et al*, | § | Case No. 24-30240 (sgj) |
| | § | |
| | § | (Jointly Administered) |
| Debtors. | § | |
| RUSSELL F. NELMS, the Liquidating Trustee of the PM Management Liquidation Trust, | § | |
| Plaintiff, | § | |
| v. | § | Adv. Proc. No. 25-03049 |
| ABRI HEALTH SERVICES, LLC, et al, | § | |
| Defendants. | § | |

## TRUSTEE'S RESPONSE TO DEFENDANT
## YEHUDAH ARYEH ZUTLER'S MOTION TO DISMISS

SBAITI & COMPANY PLLC
Mazin A. Sbaiti
Texas Bar No. 24058096
mas@sbaitilaw.com
Kevin N. Colquitt
Texas Bar No. 24072047
knc@sbaitilaw.com
2200 Ross Avenue, Suite 4900W
Dallas, Texas 75201
T: (214) 432-2899
F: (214) 214-3400

*Counsel for Russell Nelms, Liquidating Trustee*

# TABLE OF CONTENTS

I. Introduction ................................................................................................................. 1

II. Background Allegations as to Zutler ........................................................................ 2

   A. The Road to Receivership and Bankruptcy: Abri's Control and the Debtors' Downfall ... 2

   B. Zutler's Roles: Supervisor, Enforcer, and Key Participant ................................. 3

   C. Resulting Harm: Estate Dissipation and Loss of Value ....................................... 4

III. Legal Standard .......................................................................................................... 4

IV. Argument .................................................................................................................. 5

   A. The Complaint Plausibly Alleges Zutler's Fiduciary Status as a De Facto Officer/Manager ................................................................................................... 5

   B. Alternatively, Zutler is Liable for Knowing Participation in Fiduciary Breaches ............... 7

   C. The Negligence and Gross Negligence claims are Well-Pleaded ........................ 8

   D. The Business Judgment Rule Does Not Bar the Claims at the Pleadings Stage ............... 10

   E. Incorporating Abri and Frankl Defenses by Reference and without Specificity Is Inapposite ........................................................................................................... 10

   F. The Trustee Respectfully Requests Leave to Amend in the Alternative ......................... 11

V. Requested Relief ..................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Devon Energy Holdings, L.L.C.*,
    367 S.W.3d 355 (Tex. App.—Houton [1st Dist.] 2012) .......................................................5, 6, 7
*Am Wins Specialty Auto, Inc. v. Cabral*,
    582 S.W.3d 602 (Tex. App.—Waco 2019) ................................................................................. 8
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................................... 4
*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................................... 4
*BioTE Med., LLC v. Medcalf*,
    No. 05-20-00661-CV, 2022 Tex. App. LEXIS 9604 (Tex. App. Dec. 30, 2022) ....................6, 7
*Carroll v. Fort James Corp*,
    470 F.3d 1171 (5th Cir. 2006) ...................................................................................................10
*Darocy v. Abildtrup*,
    345 S.W.3d 129 (Tex. App.—Dallas 2011) ................................................................................ 8
*Fabricating Specialties v. Ab*,
    Cause No. 2017-30055, 2018 Tex. Dist. Lexis 54547 (Tex. Dist. Ct. June 25, 2018) ................ 9
*First United Pentecostal Church of Beaumont v. Parker*,
    514 S.W.3d 214 (Tex. 2017) ...................................................................................................5, 8
*FNFS, Ltd. v. Harwood (In re Harwood)*,
    637 F.3d 615 (5th Cir. 2011) .................................................................................................5, 6, 7
*Fort Bend Cnty. Drainage Dist. v. Sbrusch*,
    818 S.W.2d 392 (Tex. 1991) ....................................................................................................... 8
*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) ....................................................................................................... 4
*In re P3 Health Grp. Holdings, LLC*,
    285 A.3d 143 (Del. Ch. 2022) .....................................................................................................5
*In re Think3, Inc*,
    529 B.R. 147 (Bankr. W.D. Tex. 2015) ....................................................................................10
*In re Xtreme Power Inc.*,
    563 B.R. 614 (Bankr. W.D. Tex 2016) .....................................................................................10
*Kastner v. Jenkens & Gilchrist, P.C.*,
    231 S.W.3d 571 (Tex. App.—Dallas 2007) ................................................................................ 8
*Kinzbach Tool Co. v. Corbett-Wallace Corp.*,
    160 S.W.2d 509 (Tex. 1942) ....................................................................................................7, 8
*Myers v. Moody*,
    693 F.2d 1196 (5th Cir. 1982) ................................................................................................9, 10
*Providence Title Co. v. Truly Title, Inc.*,
    Civ. No. 4:21-cv-147, 2022 U.S. Dist. LEXIS 242733 (E.D. Tex. May 13, 2022) ..................... 8
*Siddiqui v. Fancy Bites, LLC*,
    504 S.W.3d 349 (Tex. App.—Houston [14th Dist.] 2016) .................................................5, 6, 7
*Thigpen v. Locke*,
    363 S.W.2d 247 (Tex. 1962) ........................................................................................................5

Case 25-03049-sgj   Doc 59   Filed 09/26/25   Entered 09/26/25 21:43:27   Desc Main
Document      Page 4 of 16

*Torrington Co. v. Stutzman*,
   46 S.W.3d 829 (Tex. 2000) ............................................................................................... 8
*Weaver v. Kellogg*,
   216 B.R. 563 (S.D. Tex 1997) ..........................................................................................10
*Wolfe v. CharterForest Behavioral Health Sys., Inc.*,
   185 F.R.D. 225 (W.D. La. 1999) ..................................................................................... 11

**Rules & Regulations**
FED. R. CIV. P. § 12(b)(6) ..................................................................................................4, 6, 10

**Other Authorities**
5 CHARLES ALLAN WRIGHT & ARTHUR R. MILLER, FED. PRACTICE AND
   PROCEDURE: Civil 2d § 1326) ........................................................................................ 11

## I. INTRODUCTION

Defendant Yehudah Aryeh Zutler is no mere bystander. As alleged in the First Amended Complaint, he functioned as Abri's on-the-ground supervisor over the Debtors' operations, conveyed and enforced directives from Frankl (including the pay-no-rent scheme), and exercised day-to-day authority that materially contributed to the dissipation of estate assets and the destruction of going-concern value. Those well-pleaded facts plausibly establish Zutler's fiduciary status as a de facto officer/manager and, independently and alternatively, his liability for knowing participation in the fiduciary breaches of Abri's board of directors, as well as his negligence and gross negligence. At this stage, the Court must accept those allegations as true and draw reasonable inferences in the Trustee's favor. Zutler's motion disregards both the facts pled and fundamental principles of agency and fiduciary law.

Zutler's threshold arguments—that Texas recognizes no "shadow officer" theory and that he owed no duties because he lacked a formal title—miss the point. Liability turns on function and control, not labels. The Complaint alleges Zutler actually assumed certain duties and used his authority to direct, supervise, and enforce the very conduct that harmed the estates. Alternatively, the Complaint pleads that he knowingly participated in others' fiduciary breaches—an established basis for liability under Texas law. His attempt to recast those allegations as impermissible aiding-and-abetting fails.

Zutler's remaining defenses also fail to defeat the pleadings. The business-judgment rule cannot be used on a motion to dismiss to insulate self-interested, bad-faith conduct; the Complaint alleges exactly that. His effort to incorporate and wholesale, without specificity, arguments from other defendants must also be rejected. In all events, the Complaint satisfies Rules 8 and 12(b)(6),

and to the extent the Court desires additional particulars on any element, the Trustee respectfully requests leave to amend. The motion should be denied.

## II. BACKGROUND ALLEGATIONS AS TO ZUTLER

### A. THE ROAD TO RECEIVERSHIP AND BANKRUPTCY: ABRI'S CONTROL AND THE DEBTORS' DOWNFALL

This dispute arises from a calculated campaign of self-dealing and mismanagement orchestrated by Abri Health Services, LLC ("Abri") and its insiders, which ultimately decimated the value of the Debtors' skilled nursing and assisted living facilities in Killeen, Texas. (FAC ¶¶ 1, 5–7, 13–14, 40–44, 54–70, 126–128, 132–136, 158) In March 2020, Abri acquired 100% ownership and operational control over the Debtors, installing itself as the sole manager and decision-maker. (FAC ¶¶ 13–14, 21, 40–44, 51, 137, 155) From that point forward, all management functions—including financial oversight, staffing, vendor relationships, and compliance—were centralized under Abri and its leadership team. (FAC ¶¶ 21, 40–44, 51, 137, 155) The Debtors' officers and directors, including CEO Tina Hecht, board members Ephraim Diamond and Barry Dershowitz, and "shadow director" Abraham Frankl, exercised day-to-day dominion over the Debtors' affairs, with overlapping roles and reporting lines that blurred the distinction between parent and subsidiary. (FAC ¶¶ 21–24, 50–53, 117–118, 137, 155–157)

Despite the Debtors' initial solvency and viable business prospects, Abri's leadership embarked on a self-interested scheme beginning in late 2022. (FAC ¶¶ 5–7, 54–70, 126–128, 132–136, 158) The centerpiece of this scheme was a deliberate decision to stop paying rent to the Debtors' landlord—more than $409,000 per month; not because the Debtors lacked the ability to pay, but to accumulate cash and pressure the landlord into a distressed sale of the real estate to Abri or its affiliates. (FAC ¶¶ 6, 54–68, 132–136, 157–158) This "pay-no-rent" strategy was

conceived and approved at the highest levels of Abri's governance, with Frankl, Diamond, and Dershowitz directing the plan and Hecht charged with its implementation. (FAC ¶¶ 50–53, 59, 117–118, 137, 155–157) For over a year, the Debtors withheld rent, causing penalties to mount and ultimately triggering a receivership action in Bell County, Texas. (FAC ¶¶ 5–7, 69–70, 126–128, 158) The receivership, in turn, led to bankruptcy, the dissipation of estate assets, and the destruction of the Debtors' going-concern value. (FAC ¶¶ 5–7, 69–70, 126–128, 158)

**B.    ZUTLER'S ROLES: SUPERVISOR, ENFORCER, AND KEY PARTICIPANT**

Against this backdrop, the First Amended Complaint (the "Complaint") details the pivotal role played by Defendant Yehudah Aryeh Zutler. (FAC ¶¶ 21, 50–53, 137, 155–158) Far from a passive bystander, Zutler functioned simultaneously as Abri's on-the-ground supervisor and as Frankl's enforcer, wielding day-to-day authority over the Debtors' operations. (FAC ¶¶ 21, 51, 137, 155–157) The Complaint alleges that Zutler "functioned as an officer" of Abri and one or more Debtors, acted "in a supervisory role," and that "everyone at Abri was reporting to Zutler as if he were the true CEO or board." (FAC ¶¶ 21, 51, 137, 155) Zutler was retained specifically to receive reports from facility managers, convey directives from Frankl and other insiders, and ensure that Abri's policies—including the pay-no-rent scheme—were implemented at the operational level. (FAC ¶¶ 50–53, 137, 155–157)

Zutler's involvement was not limited to administrative oversight. The Complaint pleads that Zutler actively participated in and enforced the pay-no-rent scheme, coordinated the diversion and misuse of estate funds, and supervised the redirection of resources away from the Debtors and their creditors to benefit Abri and its affiliates. (FAC ¶¶ 54–68, 132–136, 155–158) Zutler was well aware of the Debtors' resulting precarious financial condition, the purpose and likely effects of the scheme, and the mounting risks to the facilities' viability and resident care. (FAC ¶¶ 63–64, 137,

157) Through his position and reporting lines, Zutler had actual knowledge of the extreme risks posed by and intended outcome of the strategy, yet proceeded with conscious indifference to the harm it would cause the Debtors and others. (FAC ¶¶ 54, 58, 84, 146–149, 157)

### C. RESULTING HARM: ESTATE DISSIPATION AND LOSS OF VALUE

The consequences of Zutler's conduct, in concert with Abri's other insiders, were catastrophic. (FAC ¶¶ 5-7, 69-70, 126-128, 158) The Debtors were forced into receivership and bankruptcy, their cash reserves were dissipated, and their value as going concerns was destroyed. (FAC ¶¶ 5-7, 69-70, 126-128, 158) The Complaint attributes these outcomes directly to the coordinated actions of Abri's management team—including Zutler—who prioritized insider interests over those of the Debtors, their creditors, and the vulnerable residents who depended on the facilities for essential care. (FAC ¶¶ 5-7, 54-70, 126-128, 132-136, 137, 155-158)

### III. LEGAL STANDARD

In considering a motion to dismiss under FED. R. CIV. P. § 12(b)(6), "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A plaintiff survives a 12(b)(6) motion if plaintiff's facts support "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted." *Id.* While Zutler contends that Rule 9(b) may apply, he never argues anywhere how it is not met—because he cannot do so.

## IV.  ARGUMENT

### A. THE COMPLAINT PLAUSIBLY ALLEGES ZUTLER'S FIDUCIARY STATUS AS A DE FACTO OFFICER/MANAGER

"[T]he elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). Zutler challenges only the first element.

The law imposes fiduciary duties on those who actually exercise officer/manager powers regardless of formal title; courts look to actual authority, control, and assumption of managerial functions. *See FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 621 (5th Cir. 2011) (finding officer of general partner owed direct fiduciary obligations to limited partnership where that officer controlled the limited partnership's day-to-day operations); *Allen v. Devon Energy Holdings, L.L.C.*, 367 S.W.3d 355, 392 (Tex. App.—Houton [1st Dist.] 2012) ("when a limited partner exercises control over the entity's operating affairs, he will also owe a fiduciary duty to the other limited partners"). *Accord In re P3 Health Grp. Holdings, LLC*, 285 A.3d 143, 156 (Del. Ch. 2022) "[A] party does not have to hold an official title or position with an LLC to be treated as a manager.").

"The existence of the fiduciary relationship is to be determined from the actualities of the relationship between the persons involved." *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 365 (Tex. App.—Houston [14th Dist.] 2016) (quoting *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962)). Thus, someone who runs the day-today operations of an LLC despite not serving as a formal manager, officer or employee of the entity can nonetheless function as a *de facto* manager and have fiduciary responsibilities imposed on him. *In re P3*, 285 A.3d at 156-57. Courts evaluate

the realities of the relationship and the individual's actions to determine whether fiduciary duties exist. *Siddiqui,* 504 S.W.3d at 365.

The Complaint alleges that Zutler was not a mere consultant or bystander. Zutler functioned as the day-to-day operational supervisor for the Debtors and as the de facto CEO. (FAC ¶¶ 21, 51, 137, 155) He received enterprise-wide reporting, issued directives, and was the conduit through which Abri's and Frankl's policies—including the "pay-no-rent" scheme—were implemented. (FAC ¶¶ 50–53, 137, 155–157) By assuming this level of operational control, Zutler undertook the core fiduciary obligations of loyalty and care: to act in the best interests of the Debtors and their creditors. *See In re Harwood*, 637 F.3d at 621 (duty arises from assumption and acceptance of control of day-to-day operations); *Allen*, 367 S.W.3d at 392 (duty arises from operational control).

Zutler argues that the "Trustee puts forth zero evidence of a fiduciary relationship." Mot. at 9. But Zutler's motion is under Rule 12(b)(6), and the Trustee does not bear an evidentiary burden. Zutler also posits that the Complaint must allege a fiduciary duty established by contract. Mot. at 9. But the unpublished case he cites for the proposition is easily distinguishable. In *BioTE Med., LLC v. Medcalf*, No. 05-20-00661-CV, 2022 Tex. App. LEXIS 9604, at *3-4 (Tex. App. Dec. 30, 2022), where the defendant was an independent sales contractor for the plaintiff. Their contract contained "provisions prohibiting the disclosure of confidential information" by the defendant. *Id.* at *3. Later, the defendant formed a competing business and plaintiff sued defendant under a myriad of causes of action, including breach of fiduciary duty for disclosing confidential information. *Id.* at *6.

The court determined that mere access to confidential information does not impose a fiduciary duty obligation as a matter of law to keep it confidential and that since the contract prohibiting the disclosure did not also establish a fiduciary obligation to keep it confidential, it declined to impose a fiduciary duty where none existed. *Id.* at *24-25. Here, the law does impose a fiduciary duty on a person who controls the day-to-day operations of a limited liability copmany, so no formal contract with Abri is required. *See In re Harwood*, 637 F.3d at 621; *Allen*, 367 S.W.3d at 392.

Without citation to authority, Zutler argues that he could not have had fiduciary duties because the Complaint alleges that he took direction from Frank. Mot. at 9. But this ignores the fact that the Complaint also alleges that Zutler functioned as the Debtors' officer and CEO and controlled their day-to-day operations. Under Zutler's theory, any CEO who acted at the behest of another would be immune from liability. The "I was just following orders" defense does not negate fiduciary responsibilities.

Finally, Zutler's "shadow officer" argument is a strawman. Regardless of whether the law recognizes the United Kingdom's "shadow director" doctrine, the descriptive label placed on Zutler's role in the Complaint should not matter because courts look to the "actualities of the relationship" to determine fiduciary responsibilities. *Siddiqui,* 504 S.W.3d at 365.

### B. ALTERNATIVELY, ZUTLER IS LIABLE FOR KNOWING PARTICIPATION IN FIDUCIARY BREACHES

The Complaint alleges that even if Zutler did not have fiduciary duties himself, he is still liable for knowingly participating in a breach of fiduciary duty. FAC ¶¶ 154, 157. Knowing participation in a breach of fiduciary duty is a cause of action long recognized by Texas law. *See Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942). "When a defendant

knowingly participates in the breach of a fiduciary duty, he becomes a joint tortfeasor and is liable as such." *Darocy v. Abildtrup*, 345 S.W.3d 129, 137 (Tex. App.—Dallas 2011) (citing *Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 580 (Tex. App.—Dallas 2007)).

Instead of rebutting the existence of a knowing participation cause of action, Zutler attempts to erect a strawman by casting it as an aiding and abetting claim, which he contends is not recognized under Texas law. While it is true that the "Texas Supreme Court has not formally adopted aiding and abetting as a cause of action[,]" *Am Wins Specialty Auto, Inc. v. Cabral*, 582 S.W.3d 602, 610 (Tex. App.—Waco 2019), it has not rejected it either. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224-25 (Tex. 2017).

Moreover, aiding and abetting a breach of fiduciary duty and knowing participation in breach of fiduciary duty are distinct causes of action. *Providence Title Co. v. Truly Title, Inc.*, Civ. No. 4:21-cv-147, 2022 U.S. Dist. LEXIS 242733, at *2 (E.D. Tex. May 13, 2022). Regardless, the Complaint does not allege an aiding and abetting cause of action—those words appear nowhere in the Complaint—it alleges a claim for knowing participation, which is well established under Texas law. *See Kinzbach Tool Co.*, 160 S.W.2d at 514.

### C. THE NEGLIGENCE AND GROSS NEGLIGENCE CLAIMS ARE WELL-PLEADED

"Texas law generally imposes no duty to take action to prevent harm to others absent certain special relationships or circumstances." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000). However, "'one who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured thereby.'" *Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex. 1991)

The Complaint alleges that Zutler functioned as the CEO of Debtors from September 2023 to January 2024. FAC ¶ 137. In undertaking that role, Zutler had a duty to exercise reasonable care

that the Debtors' property would not be injured. *Myers v. Moody*, 693 F.2d 1196, 1209 (5th Cir. 1982) ("Texas law imposes on corporate officers and directors a duty to exercise due care in the management of the corporation's affairs."). Under Zutler's supervision, Debtors lost track of over $7 million dollars during a time when Debtors were in a cash crunch. FAC ¶ 134. The Debtors also continued the tactic of not paying rent during the time period when Zutler was the de facto CEO. FAC ¶ 135. Further, Zutler failed to prevent the misdirection of Debtors' funds to Abri while functioning as the CEO. FAC ¶ 136.

These allegations provide a sufficient plausible basis for the Court to infer that Zutler failed to exercise "that degree of care which a person of ordinary prudence would exercise under the same or similar circumstances[,]" which is all that is needed now. *See Myers*, 693 F.2d at 1209.

Zutler argues the Complaint points the finger at Hecht, arguing that he had no knowledge of the missing account. Mot. at 11. This is an artificial distinction as both can be liable for the same wrongs. The Complaint specifically alleges that Zutler "lost sight of" the funds as well. FAC, ¶ 63. Zutler also argues that it was Hecht who should be responsible because he had no duty to stop Hecht's mismanagement. Mot. at 11. But this ignores the allegation that it was Zutler who enforced the policy to deliberately not pay rent and enforced the mismanagement of funds. FAC ¶ 155.

Finally, Zutler cites an unpublished opinion on summary judgment from a state district court for the notion that losing money is not the "'extreme degree of risk' required for a gross negligence finding." Mot. at 11 (quoting *Fabricating Specialties v. Ab*, Cause No. 2017-30055, 2018 Tex. Dist. Lexis 54547, *3 (Tex. Dist. Ct. June 25, 2018)). The facts are completely distinguishable. Moreover, the court found that, because those defendants owed no duty, they could not be negligent at all, *id.*; it in no way contradicts the allegations here and long-standing Fifth Circuit

precedent holding that a corporate officer can be found grossly negligent where the officer operates a company "in an illogical, irresponsible, and dangerous manner." *Myers*, 693 F.3d at 1210; *see also Weaver v. Kellogg*, 216 B.R. 563, 569-70, 585 (S.D. Tex 1997) (finding corporate officers of bankrupt entity could be held grossly negligent for diverting bankrupt entities' assets to other corporation under their control). The fact that Zutler assumed the duty and discharged it negligently or grossly negligently is sufficient at this stage.

### D. THE BUSINESS JUDGMENT RULE DOES NOT BAR THE CLAIMS AT THE PLEADINGS STAGE

Zutler attempts to invoke the business judgment rule in a footnote. Footnotes are asides, they are not arguments. Moreover, as described above, the Complaint states claims for breach of fiduciary duty and gross negligence, both of which independently rebut the invocation of the business judgment rule raised in a motion under Rule 12(b)(6). *See In re Xtreme Power Inc.*, 563 B.R. 614, 642-43 (Bankr. W.D. Tex 2016); *see also In re Think3, Inc*, 529 B.R. 147, 181-82 (Bankr. W.D. Tex. 2015).

### E. INCORPORATING ABRI AND FRANKL DEFENSES BY REFERENCE AND WITHOUT SPECIFICITY IS INAPPOSITE

Zutler has informed the Court that he "expressly adopts and incorporates by reference all arguments, authorities, and grounds for dismissal set forth in the motions to dismiss filed by Defendants Frankl and Abri. To the extent those arguments apply to the claims asserted against Zutler, he seeks to benefit fully from them and incorporates all such relevant arguments in support of this Motion.." Motion at fn 1. While incorporation by reference is anticipated by the Federal Rules of Civil Procedure, "such incorporation must be done 'with a degree of specificity and clarity which would enable the responding party to easily determine the nature and extent of the incorporation.'" *Carroll v. Fort James Corp*, 470 F.3d 1171, 1176 (5th Cir. 2006) (quoting *Wolfe v.*

*CharterForest Behavioral Health Sys., Inc.*, 185 F.R.D. 225, 228-29 (W.D. La. 1999)). "'[R]eferences to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation.'" *Id.* (quoting 5 CHARLES ALLAN WRIGHT & ARTHUR R. MILLER, FED. PRACTICE AND PROCEDURE: Civil 2d § 1326). Here, Zutler has provided no specificity or clarity and has left Plaintiff with no way of discerning which arguments may be applicable or how Zutler contends they apply. Thus, the Court should deny Zutler's attempt to incorporate.

### F. THE TRUSTEE RESPECTFULLY REQUESTS LEAVE TO AMEND IN THE ALTERNATIVE

The Trustee respectfully requests leave to amend in the event the Court decides that he needs to add additional detail or factual averments to support one or more of his claims.

## V. REQUESTED RELIEF

The Trustee respectfully requests that the Court deny Zutler's motion to dismiss in its entirety and grant the Trustee any other relief to which he is justly entitled.

Date: September 26, 2025

Respectfully submitted,
**SBAITI & COMPANY PLLC**
*/s/Kevin N. Colquitt*
**Mazin A. Sbaiti**
Texas Bar No. 24058096
mas@sbaitilaw.com
**Kevin N. Colquitt**
Texas Bar No. 24072047
knc@sbaitilaw.com
Dallas Arts Tower
2200 Ross Avenue, Suite 4900W
Dallas, Texas 75201
T: (214) 432-2899
F: (214) 853-4367

**Counsel for Russell Nelms, Liquidating Trustee**

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record via electronic service on September 26, 2025.

*/s/ Kevin N. Colquitt*
Kevin N. Colquitt